UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION/PLANO OFFICE

| | |
|---|---|
| HENRI FRILOUX, | CIVIL ACTION NO. |
| and ALLISON FRILOUX | |
| Individually and | |
| on behalf of similarly situated individuals | SECTION |
| VERSUS | MAGISTRATE |
| APPLE INC. and | |
| AT&T MOBILITY , L.L.C. | JURY DEMANDED |

## CLASS ACTION COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come plaintiffs, HENRI FRILOUX and ALLISON FRILOUX**, individually and on behalf of similarly situated individuals** (hereinafter plaintiffs and/or "class representatives"), being of the full age of majority, domiciled in Collin County, State of Texas, who file this claim individually and as representative of all others similarly situated, respectfully allege as follows:

1.

Class Representative are as follows:

A) HENRI FRILOUX, an individual of the full age of majority, domiciled in Collin County, State of Texas;

B) ALLISON FRILOUX, an individual of the full age of majority, domiciled in Collin County, State of Texas.

2.

Made defendant herein is **APPLE, INC.** ("**Apple**"), a California corporation with its principal place of business in Cupertino, California and doing business within the State of Texas and the jurisdiction of this Honorable Court.

3.

Made defendant herein is **AT&T MOBILITY, L.L.C.**, ("AT&T") a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia authorized to do and doing business within the State of Texas and the jurisdiction of this Honorable Court.

## JURISDICTION

4.

This Honorable Court is vested with jurisdiction by virtue of 28 U.S.C. §1332. Plaintiffs are domiciliaries of the State of Texas and defendants are domiciliaries of a state other than the State of Texas. This putative class action is brought by named plaintiffs herein on behalf of all others similarly situated, each of whom are domiciled within the State of Texas. Further, the amount in controversy is in excess of $5,000,000.00.

## VENUE

5.

Plaintiffs allege that the cause of action forming the basis of this claim occurred within the Eastern District of Texas, such that venue in this Honorable Court is proper.

# FACTS

6.

In January 2007, the iPhone was launched. The iPhone was manufactured and created by Defendant Apple. The iPhone is a combination of an iPod (which stores thousands of music files and plays them back for the listener) and a cellular phone (which allows users to talk on the telephone while mobile) with an incredible amount of creative functionality. The cell phone portion of the iPhone works exclusively with the AT&T cellular phone network. Defendants Apple and AT&T launched the iPhone as a joint venture. Both AT&T and Apple sold the iPhone in their respective stores.

7.

The original version of the iPhone was called the "2G." The next generation, launched in July 2008, was called the "3G." The most recent version, launched in June 2009, is called the "3G-S."

8.

Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service," or "MMS," which, among other things, allows users to send a picture to another user's cell phone.

9.

Apple advertised heavily that the new version of iPhone, the 3G, as well as the even newer version, the 3G-S, would allow MMS. Apple's print and video advertisements in and on television, the Internet, the radio, newspapers, and direct mailers all touted the availability of MMS.

10.

Similarly, AT&T advertised that the 3G and 3G-S would allow MMS. MMS functionality was one of the reasons people chose to buy or upgrade to a 3G or 3G-S.

11.

MMS has been available on other types of cell phones for many years.

12.

From Apple's website:

***Send MMS***

*Take a photo or shoot some video, then send it via Messages. You can also send audio recordings from within Messages, information from Contacts, and directions from Maps.*

13.

A Pop-Up window on Apple's website reads:

***Sending Photos and Videos***

*You can take a photo or make a video (iPhone 3GS only) from within Messages and include it in your conversation with another MMS-capable device.*

From AT&T's website:

***Messages***

*Use messages to send text, photos, audio, video, and more. Forward a whole message or just the important parts.*

14.

After the 3G iPhone came out in July 2008, customers who purchased the 3G iPhone began to realize that MMS was not available.

15.

In response, AT&T published this in the AT&T Answer Center page of their website for problems related to MMS:

> *Customers who are sent a MMS message and own a non-MMS capable device will receive a text message instead of an actual MMS message. The message will contain the website address of www.viewmymessage.com/1 or www.viewmymessage.com/2 as well as a user name and password. To view the MMS message, please access the website from a computer and enter the user name and password provided in the text message.*

16.

Incredibly, AT&T was directing customers interested in MMS *to go to a computer* to view the message.

17.

The AT&T Answer Center has this unhelpful solution for the problem "*Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message (MMS) with iPhone*":

> **Goal:** *Send, Receive, or Delete a Picture, Audio or Video Multi-media Message with iPhone*
> **Symptom:** *Unable to Send, Receive, or Delete a Picture, Audio, or Video Multimedia Message with iPhone*
> **Fix:** *iPhone does not support sending, or receiving picture, audio, or video multimedia messages. If an MMS is sent to the iPhone, it will receive a text message instead that contains a link to a website address where the message can be viewed.*

The "Fix" was essentially to say "tough luck."

18.

In early 2009, sales representatives for both Apple and AT&T began assuring customers that MMS would be available on both the 3G and the 3G-S beginning on June 17, 2009, when the new iPhone OS 3.0 Software Update would become available. Representatives in Apple and AT&T

stores assured customers that with this new application, which could be downloaded for free, MMS would be available.

19.

In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of 3G-S. AT&T lowered the price of a 3G to less than $100 and assured customers that the new 3.0 Software Upgrade would solve all their problems. 30. Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact info. Even tap to snap a picture right inside Messages." A graphic showed the familiar iPhone test message bubbles with a picture inserted.

20.

Millions of customers, including Louisiana residents, purchased the 3G and 3G-S, waiting for the day in June 2009 when the new application would be available which would allow MMS. Unfortunately, after downloading the new 3.0 Software Update application, MMS still did not work on both the 3G and 3G-S.

21.

The Apple troubleshooting page explained the problem:

*To send and receive MMS messages on your iPhone 3G, do the following:*

*1. Verify that your iPhone and wireless carrier meet the system requirements. To use MMS you need:*
*--iPhone OS 3.0 installed on iPhone 3G. The original iPhone does not support sending or receiving MMS messages. Install iPhone OS 3.0 if necessary.*
*--**A wireless carrier that supports MMS**.*
*--A coverage area in which you can place and receive a call, and access the Internet*

*using Safari on your iPhone (3G network coverage recommended).*
*2. If **this article** shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below.*

22.

The "this article" phrase was a blue-colored hyperlink. Clicking on that hyperlink leads to a page showing several countries. Clicking on North America, and viewing the graph for USA, under the heading "AT&T" it shows that AT&T is NOT a carrier which offers MMS! Of course, AT&T is the ONLY carrier in the United States used by the iPhone. In other words, AT&T's towers do not support MMS.

23.

Calling Apple Customer Support reveals that AT&T has never upgraded its towers so as to support the functionality necessary for MMS. Therefore, the iPhone cannot offer MMS as claimed.

24.

The only excuse offered by AT&T and Apple is a mouseprint disclaimer on the website, in barely readable font, which reads "*MMS Support from AT&T coming in late summer.*"

25.

None of the representatives in either the Apple or AT&T stores advise consumers that the MMS functionality of the phones will only work after the AT&T towers are upgraded to support MMS in "late summer."

26.

When and if AT&T finally upgrades its towers, the millions of iPhone purchasers will get what they bargained for in terms of MMS. But in the meantime, all the millions of purchasers of the

3G and the 3G-S iPhone have been deceived and cheated out of what they thought they were purchasing—a phone with MMS functionality.

27.

Apple and AT&T representatives continue to misrepresent and/or conceal, suppress, or omit material facts to customers in their stores about the MMS functionality of the 3G and 3G-S iPhones.

## NAMED PLAINTIFF'S FACTUAL ALLEGATIONS

28.

A.) Henri Friloux went into an Apple store in June 2009 and was interested in a phone with MMS functionality.

B.) Allison Friloux went into an AT&T store in June 2009 and was interested in a phone with MMS functionality.

In all cases, the store representative misrepresented and/or concealed, suppressed, or omitted material facts as to the iPhone having MMS functionality.

29.

Plaintiffs, purchased the iPhone primarily for personal, family, or household purposes.

30.

At some time after purchase of the I-Phone, plaintiffs learned that AT&T had not upgraded its towers and may not do so until sometime in the late summer of 2009.

31.

Plaintiffs were damaged in that for months they were unable to send MMS messages until approximately September 26, 2009.

## CLASS ALLEGATIONS

32.

Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of all residents or individuals of Texas on behalf of themselves and thousands of other iPhone 3G and 3G-S purchasers from Apple and AT&T who are similarly situated to Plaintiffs and who reside in the State of Texas. The class is defined as follows:

### CLASS DEFINITION

**All residents of Texas who, between July 1, 2008 and the date of final judgment or settlement, have purchased a 3G or 3G-S iPhone from either AT&T Mobility L.L.C. or Apple, Inc. for personal, family, or household use.**

33.

The class is so numerous that joinder of all issues in impracticable. The class is so numerous that joinder of all members is impractical. Published news reports stated that over a million customers purchased the 3G iPhone the day it became available. Many of those customers are located in Louisiana. It is estimated that the Class will be composed of at least 10,000 individuals. Plaintiffs will be claiming damages for the 3G or 3G-S iPhone they purchased. A 3G iPhone was selling from anywhere between $100 and $500. Additionally, no attorney would have the financial resources to litigate this case against opposition from the Defendants when the potential for recovery is so small for each class member. Therefore, joinder of all similarly situated plaintiffs is appropriate.

34.

The claims asserted by Plaintiffs on behalf of themselves and all similarly situated Class members present questions of fact or law common to the class, including, *inter alia*, whether Defendants engaged in deceptions and concealments in making claims that MMS was available on

9

the 3G and 3G-S. Questions of law and fact common to the members of the class predominate over questions affecting individual members. Those common questions of law and fact include:

**Fact Questions**

a) Did the Defendants know that AT&T had not upgraded its towers to support MMS, and, if so, when did they gain this knowledge;

b) Did the Defendants know that most customers viewed MMS as an important functionality;

c) Did the Defendants conceal from consumers that: (1) AT&T had not upgraded its towers to support MMS and had no plans to do so for many months; and (2) the 3.0 Software Upgrade would not fix the problem and make MMS available (by itself);

d) Was Defendant aware of alternative methods of disclosure which would have more adequately warned customers of the unavailability of MMS and the reason for the non-availability of MMS;

e) Did the Defendants market and advertise their 3G and 3G-S phones as supporting MMS with no mention, or little mention, of the fact that AT&T towers were not equipped to support MMS;

f) Do the salespersons at Apple and AT&T have any scripts or training materials which would provide them with knowledge or information as to the fact that AT&T towers do not support MMS, or any advice as to when the towers will support MMS;

g) According to Apple's and AT&T's marketing research, is MMS functionality an important decision driver for residential consumers when buying iPhones;

h) When will AT&T have finished its tower upgrade;

I) Did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading to consumers;

j) Did AT&T or Apple receive complaints from consumers about the lack of MMS functionality, and what was their response;

k) What did Defendants tell their own managers and employees internally about MMS functionality;

l) Were any committees or work groups created to solve the MMS problem, and what was said in their meetings;

m) Why don't Apple and AT&T tell customers the truth about MMS when the customer is buying the product in the store; and

n) Other fact questions.

**Legal Questions:**

a) Did the Defendants engage in an unfair practice in connection with the sale or advertisement of merchandise when they represented to Texas consumers that their iPhones would have MMS functionality;

b) Did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under the MMPA when they represented to Texas consumers that their iPhone would have MMS functionality;

c) Did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under

the MMPA when they represented to Texas consumers that the 3.0 Software Upgrade would allow their iPhones to have MMS functionality?

d) Did the Defendant conceal, suppress, or omit material facts when they failed to reveal to consumers that: (a) the towers of AT&T—the exclusive phone network for the Phone-- did not support MMS functionality; (b) AT&T would not have the towers upgraded for many months; and ©) the 3.0 Software Upgrade would not, by itself, solve the problem;

e) To what extent and in what amount were Plaintiffs and the Class damaged by Defendants' unlawful actions?

f) Do the Defendants have affirmative defenses which are common to all class members? and

g) Other legal questions. 54. The claims asserted by Plaintiffs on behalf of themselves are typical of the other Class members' claims in that the other Class members also received similar representations about MMS.

35.

Plaintiffs will fairly and adequately represent and protect the interests of the class because:

a) Plaintiffs have retained counsel experienced in the prosecution of class action litigation and counsel will adequately represent the interests of the class;

b) Plaintiffs and their counsel are aware of no conflicts of interest between plaintiffs and absent class members or otherwise;

c) Plaintiffs have, or can acquire, adequate financial resources to assure that the interests of the class will not be harmed; and

d) Plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation.

36.

A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other available methods of adjudication in that:

a) Neither the size of the class, nor any other factor, make it likely that difficulties will be encountered in the management of this class as a class action;

b) The prosecution of separate actions by individual class members, or the individual joinders of all class members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the class;

c) Because of the disparity of resources available to defendants versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members; and

d) The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each member of the class and meets all due process requirements as to fairness to all parties. A class action is also superior to maintenance of these claims on a claim by claim basis when all actions arise of the same circumstances and course of conduct.

## COUNT I

37.

**(Texas Deceptive Trade Practices Act "DTPA")**

Plaintiffs reincorporate and reallege Paragraphs 1 through 36 as if more fully set forth herein.

38.

Plaintiffs bring claims against the Defendants under Texas Deceptive Trade Practices Act, V.T.C.A., Bus. & C. § 17.41 *et seq.*

39.

Defendants misrepresented, concealed, suppressed, or omitted the following material facts in connection with the sale and advertisement of 3G and 3G-S iPhones to consumers in Texas:

a) AT&T had not upgraded its towers to support MMS, and therefore MMS would be unavailable on iPhones until the towers were upgraded;

b) AT&T would not have the towers upgraded for many months; and

c) The 3.0 Software Upgrade would not, by itself, solve the problem and make MMS available.

40.

Defendants employed, in connection with the sale and advertisement of 3G and 3G-S iPhones, to Texas consumers, deception, fraud, false pretense, false promise, misrepresentation, and unfair practices, including but not limited to representing that the phones would support MMS when Defendants knew, in fact, that they would not support MMS.

41.

As a direct result of the deceptions, frauds, false pretenses, misrepresentations, unfair practices, concealments, suppressions, and omissions of Defendants, Plaintiffs have suffered an ascertainable loss of money, namely the difference in value between the iPhone as represented and the iPhone as it actually exists.

42.

Moreover, Defendants actions were intentional and outrageous, without any justification or excuse, and warrant the imposition of punitive damages and mental anguish under the DTPA.

43.

In the event Plaintiffs are the prevailing party, Plaintiffs also seeks a reasonable attorney's fee and costs as provided under the DTPA.

## COUNT II

44.

**(Civil Fraud)**

Plaintiffs reincorporate and reallege Paragraphs 1 through 43 as if more fully set forth herein.

45.

Plaintiffs bring civil fraud claims against the Defendant as material misrepresentations

were made; the representations were false; speaker knew the representations were false when made; representations were made that it should be acted upon by Plaintiffs and others similarly situated; Plaintiffs acted in reliance on false statements and suffered injury.

**COUNT III**

46.

**(Tort)**

Plaintiffs reincorporate and reallege Paragraphs 1 through 45 as if more fully set forth herein.

47.

Plaintiffs bring claims against the Defendants for tort damages arising from Defendants' actions as Plaintiffs were damages from the tortious actions of Defendants.

**COUNT IV**

**(Conspiracy to Defraud)**

48.

Plaintiffs reincorporate and reallege Paragraphs 1 through 47 as if more fully set forth herein.

49.

Plaintiffs bring claims against the Defendants for Conspiracy to Defraud.

50.

Defendants agreed to commit a wrong on the Plaintiffs by advertising the availability of a service (MMS) that Defendants were unable to provide.

51.

Plaintiffs were injured by the conspiracy to defraud engaged in by the Defendants.

**COUNT V**

**(unjust enrichment)**

52.

Plaintiffs reincorporate and reallege Paragraphs 1 through 51 as if more fully set forth herein.

53.

Plaintiffs bring claims against the Defendants for unjust enrichment as Defendants were unjustly enriched by being forced to pay for a service (MMS) that was advertised but not actually offered.

**RELIEF SOUGHT**

54.

Plaintiffs reincorporate and reallege Paragraphs 1 through 53 as if more fully set forth herein.

55.

**WHEREFORE**, Plaintiffs and all similarly situated individuals who do not opt out of this action demand:

a) an order, entered as soon as practicable, certifying this case as a class action under Rule 23.

b) an order directing that appropriate notice to class members be delivered;

c) compensatory damages for Plaintiffs and the other Class Members in an amount which is fair and reasonable to compensate them for their damages;

d) all damages in an amount which is fair and reasonable;

e) punitive damages;

f) reasonable attorney's fees and costs; and

g) such other relief as the Court deems just and proper.

56.

Plaintiff and the proposed class members demand a trial by jury.

Respectfully Submitted,

**MARTZELL & BICKFORD**

*/s/ Scott R. Bickford*

_____

**SCOTT R. BICKFORD, T. A. (TX 02295200)**
usdcedla@mbfirm.com
338 Lafayette Street
New Orleans, LA 70130
Tel: (504) 581-9065
Fax: (504) 581-7365

**PENTON LAW FIRM**

**RONNIE G. PENTON (LA #10462)**
fedcourtmail@rgplaw.com
209 Hoppen Place
Bogalusa, LA 70427
Tel: (985) 732-5651
Fax: (985) 735-5579

**ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE:**

**APPLE, INC.**
Through its agent for service of process
CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

**AT&T MOBILITY , L.L.C.**
Through its agent for service of process
CT Corporation Systems
350 North St. Paul Street
Dallas, TX 75201

F:\Clients\APPLE i PHONE\Pleadings NDTX\Federal Complaint Final.wpd